**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-11-0823 |
| | § | |
| JOSE DE LA CRUZ | § | |
| MEDINA-GUTIERREZ | § | |

**MEMORANDUM AND OPINION**

On October 21, 2011, Texas state police stopped the defendant, Jose de la Cruz Medina-Gutierrez, for speeding.  The police promptly issued him citations for that traffic offense and for failing to maintain evidence of financial responsibility, (Docket Entry No. 15, Ex. 1), and jailed him. That same day, the Department of Homeland Security filed an immigration detainer "to provide adequate time for DHS to assume custody of the alien." (*Id.*, Ex. 2).  Two days later, on October 23, a DHS agent interviewed Medina-Gutierrez at the local jail.  Medina-Gutierrez admitted that he was illegally in the United States.  (*Id.*, Ex. 4).  On that same day, DHS filed a notice of its intent to reinstate its prior removal order against Medina-Gutierrez, (*id.*, Ex. 3), and Texas police transferred custody to the Immigration and Customs Enforcement, (*id.*, Ex. 4).  Within 30 days after the detainer issued, on November 22, the government indicted Medina-Gutierrez for illegal reentry after deportation, in violation of 8 U.S.C. § 1326.  He was not charged criminally on the traffic citations.

Medina-Gutierrez has moved to dismiss the indictment for a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b).  (Docket Entry No. 15).  He argues that the failure to indict him within 30 days after he was taken into local custody on the traffic offenses requires dismissal of the indictment, with prejudice.  The government has responded, (Docket Entry No. 16), and Medina-

Gutierrez has replied, (Docket Entry No. 17).  At the court's request, the parties filed supplemental

briefs.  (Docket Entry Nos. 18–19).

"The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to

a speedy trial, and also to serve the public's interest in prompt criminal proceedings."  *United States*

*v. Gonzalez-Rodriguez*, 621 F.3d 354, 368 (5th Cir. 2010).  The Act provides that "[a]ny information

or indictment charging an individual with the commission of an offense shall be filed within thirty

days from the date on which such individual was arrested or served with a summons in connection

with such charges."  18 U.S.C. § 3161(b).  "An individual is 'arrested' under the Speedy Trial Act

only when he is 'taken into custody after a federal arrest for the purpose of responding to a federal

charge.'"  *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 n.6 (5th Cir. 2000) (quoting

*United States v. Johnson,* 815 F.2d 309, 312 (5th Cir.1987)); *accord United States v. Gardner*, 248

F. App'x 605, 607 (5th Cir. 2007) (per curiam).  Failure to comply with the Act's thirty-day time

limit results in dismissal.  18 U.S.C. § 3162(a)(1); *De La Pena-Juarez*, 214 F.3d at 597.  Whether

the dismissal should be with or without prejudice turns on the court's determination of certain

factors.  *See United States v. Mancia-Perez*, 331 F.3d 464, 468 (5th Cir. 2003).

Generally, an arrest by state authorities on state charges does not trigger the Speedy Trial

Act.  *See United States v. Green*, 508 F.3d 195, 201–02 (5th Cir. 2007).  Nor is the Act triggered by

"civil detention generally" or "ICE administrative detention specifically."  *United States v.*

*Rodriguez-Amaya*, 521 F.3d 437, 441 (4th Cir. 2008).  This is the rule in the Fifth Circuit, *see De*

*La Pena-Juarez*, 214 F.3d at 597–98, and a majority of the circuits, *see United States v. Pasillas-*

*Castanon*, 525 F.3d 994, 997 (10th Cir. 2008) (adopting rule and citing decisions of First, Third,

Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits).  This circuit and other circuits, *see Pastillas-*

*Castanon*, 525 F.3d at 997 (adopting exception and citing decisions of First, Second, Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits), also recognize what is known as the "ruse exception" to this general rule.  "Under this exception, . . . an INS arrest triggers the Speedy Trial Act's time clock where the administrative and criminal charges against the defendant are identical such that the detention is simply used as a substitute for criminal arrest."  *De La Pena-Juarez*, 214 F.3d at 598 (internal quotation marks omitted).  Such a civil detention "is used primarily or exclusively to develop criminal charges involving the conduct on which the civil arrest was based[.]"  *Id.* (quoting *United States v. Restrepo*, 59 F. Supp. 2d 133, 137 (D. Mass. 1999)).  But "[t]he mere fact that the detaining authorities are aware other potential criminal charges are available does not trigger the exception."  *Pastillas-Castanon*, 525 F.3d at 998.  Rather, the defendant must "demonstrate[] that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution."  *De La Pena-Juarez*, 214 F.3d at 598.  "In short, if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception."  *Pastillas-Castanon*, 525 F.3d at 998.

Courts apply the ruse exception to protect defendants "against the possibility of collusion between federal criminal authorities and civil or state officials."  *De La Pena-Juarez*, 214 F.3d at 598.  "[S]ome evidence of collusion to detain [the] defendant to facilitate his prosecution is still necessary even when the administrative and criminal charges are identical[.]"  *United States v. Pinto-Roman*, 337 F. Supp. 2d 781, 787 (E.D. Va. 2004); *accord United States v. Guevara-Umana*, No. 04 CR 935(SJF), 2006 WL 3335058, at *3 (E.D.N.Y. Oct. 27, 2006).  Courts consistently decline to apply the exception if the record shows no indication of collusion.  *See, e.g.*, *Pastillas-*

*Castanon*, 525 F.3d at 998; *Rodriguez-Amaya*, 521 F.3d at 442; *De La Pena-Juarez*, 214 F.3d at 599, 600.

Medina-Gutierrez argues that his case falls within the ruse exception.  The record and case law defeat his argument.  In both *De La Pena-Juarez* and a consolidated companion case, *United States v. Aguirre-Tibra*, the defendants made similar arguments.  Both argued that on the date their civil detainers issued, the Immigration and Naturalization Service knew that they had illegally reentered the country and that the detainer was a substitute for criminal prosecution.  *De La Pena-Juarez*, 214 F.3d at 598, 599.  The Fifth Circuit rejected the arguments.  There was "absolutely no evidence of collusion between the INS and criminal officials."  *Id*. at 599 (De La Pena-Juarez), 600 (Aguirre-Tibra).  When the detainer was issued for De La Pena-Juarez, the INS knew that he was an illegal alien but lacked sufficient information to charge him with illegal reentry.  The INS had interviewed De La Pena-Juarez and had more information about his status in this country than was available in the present case.  *Id.* at 599.  For Aguirre-Tibra, the INS agents knew on the date the detainer issued that he previously had been deported and that he had illegally reentered.  *Id.*  Even with the additional information, the Fifth Circuit held that the defendants had failed to show that the primary purpose for the INS detainers was to hold them for future prosecution for illegal reentry.  *Id.*

In both *De La Pena-Juarez* and *Aguirre-Tibra*, the charges on which the defendants were arrested by state authorities permitted detention.  In *De La Pena-Juarez*, the charge was aggravated assault, *id.* at 595; in *Aguirre-Tibra*, the charge was unlawfully carrying a weapon, *id.* at 596.  In the present case, by contrast, Medina-Gutierrez could not have been detained on the traffic offenses for more than 48 hours, assuming he could have been detained at all.  *See* TEX. CODE. CRIM. PROC. §

4

14.06(a)–(b) (for a person charged with a Class C misdemeanor, the authorities may either issue citation *or* detain person for up to 48 hours). But a basis existed for detaining Medina-Gutierrez other than to charge him criminally for illegal reentry. Medina-Gutierrez previously had been removed and could have been detained for deportation as opposed to criminal prosecution for illegal reentry. *See De La Pena-Juarez*, 214 F.3d at 599; Docket Entry No. 15, Ex. 2 (notice of detention states that "[d]eportation or removal from the United States has been ordered); *see also id.*, Ex. 3. Even if Medina-Gutierrez could not have been detained for the traffic violations, that does not change the fact that there was a lawful basis on October 21 for ordering him detained to effectuate his deportation. *See Pastillas-Castanon*, 525 F.3d at 998.

The facts of this case are similar to *United States v. Guerrero*, No. CRIM 3:06CR30030-01, 2006 WL 3307442 (W.D. La. Nov. 9, 2006). In that case, on July 19, 2006, a Louisiana State Trooper stopped Jazmin Adelaida Guerrero for speeding. When the trooper ran a check, he discovered that Guerrero was unlicensed and had an active arrest warrant for an immigration violation. The trooper took Guerrero into custody for the traffic violation, driving without a license, and the warrant. That same day, ICE placed a civil detainer on Guerrero. On August 14, the government criminally charged Guerrero with illegal reentry. On August 24, the government filed the one-count indictment. Guerrero moved to dismiss, alleging a violation of the Speedy Trial Act. *Id.* at *1. The district court denied the motion. The court, citing *De La Pena-Juarez*, first noted that "[t]he Speedy Trial Act, as a general rule, does not apply when a defendant is detained on civil deportation charges." *Id.* It then noted that, on the same date that Guerrero was booked on the traffic charges and the outstanding warrant, ICE had placed a civil detainer on her. Guerrero

"presented no evidence that her civil detention by ICE was a ruse to hold her for criminal prosecution." *Id.*

This case is similar to *Guerrero*. Medina-Gutierrez has presented no evidence of collusion between the local and federal authorities. Even assuming that DHS knew on October 21, when the immigration detainer issued, that Medina-Gutierrez could have been criminally charged with illegal reentry, that fact alone is insufficient to trigger the ruse exception. *See Pastillas-Castanon*, 525 F.3d at 998. Medina-Gutierrez's October 21 arrest did not trigger the Speedy Trial Act. Nor did his October 23 remand to ICE custody. Although Medina-Gutierrez admitted to a DHS agent that he was in the country illegally, he has presented no evidence that the detention was a ruse to delay in order to prepare criminal charges against him. "[Medina-Gutierrez] would have been detained awaiting removal even if the federal criminal charge had not been brought." *United States v. Rueda-Betancourth*, Crim. No. 07-00217-WS, 2007 WL 4219439, at *5 (S.D. Ala. Nov. 28, 2007). And even assuming that the Speedy Trial Act was triggered on October 23, the November 22 indictment still fell within the Speedy Trial Act's 30-day time limit.

Medina-Gutierrez's motion to dismiss, (Docket Entry No. 15), is denied.

SIGNED on January 23, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

6